FILED
United States Court of Appeals
Tenth Circuit

November 27, 2015

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT
_____

TWILLADEAN CINK,

    Plaintiff - Appellant,

v.

GRANT COUNTY, OKLAHOMA, a
political subdivision which is sued in the
name of the Board of County
Commissioners for Grant County,
Oklahoma,

    Defendant - Appellee,

and

SCOTT STERLING, individually,

    Defendant.

No. 15-6030
(D.C. No. 5:13-CV-01069-C)
(W.D. Okla.)

_____

ORDER AND JUDGMENT[*]
_____

Before **TYMKOVICH**, Chief Judge, **HOLMES** and **PHILLIPS**, Circuit Judges.
_____

    Plaintiff Twilladean Cink appeals from a grant of summary judgment in favor

of defendant Grant County, Oklahoma, on her claims under the Age Discrimination

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

in Employment Act (ADEA), 29 U.S.C. §§ 621-634, and the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213.[1] The district court concluded that Grant County was not her employer and therefore was not subject to liability under either statute. We hold that the district court applied the wrong analysis and reached the wrong conclusion regarding the County's status as Ms. Cink's employer. We therefore reverse and remand for further proceedings.

## I. BACKGROUND

Ms. Cink worked as a jailer/dispatcher at the Grant County Sheriff's Office for over thirty years. In June 2013, a few months after returning to work from a medical leave of absence, she was terminated by the newly elected Sheriff, Scott Sterling. Following exhaustion of administrative remedies, she brought this action alleging, *inter alia*, that her termination was the result of age and disability discrimination, as well as retaliation for activities protected under the ADEA and ADA. Grant County, the defendant on these claims,[2] moved for summary judgment on various grounds. The first of these, and the sole ground relied on by the district court in granting the motion, was that Ms. Cink's employer for purposes of the ADEA and ADA was the Grant County Sheriff's Office, not Grant County itself.

---

[1] The district court's concomitant election not to exercise supplemental jurisdiction over Ms. Cink's remaining state-law claims resulted in a final disposition of the action for purposes of appeal. *See generally Amazon, Inc. v. Dirt Camp, Inc.*, 273 F.3d 1271, 1274-75 (10th Cir. 2001).

[2] Grant County is "a body corporate and politic and as such [is] empowered . . . [t]o sue and be sued." Okla. Stat. tit. 19, § 1. As the caption of this case reflects, "[i]n all suits or proceedings by or against a county, the name in which a county shall sue or be sued shall be, 'Board of County Commissioners of the County.'" *Id.* § 4.

2

The district court resolved that question by applying the "joint employer" and "single employer" tests adopted by this court for determining employer status when multiple employer-entities may be involved.  *See Bristol v. Bd. of Cty. Commr's*, 312 F.3d 1213, 1218 (10th Cir. 2002) (en banc).  While these tests frame the analysis differently, the district court correctly observed that both look to the control the alleged employer-entities exercised over conditions of employment—in either a separate-but-joint or effectively-unitary manner, *see id.* at 1218 (summarizing joint-employer test), 1220 (summarizing single-employer test).  The district court acknowledged that Grant County was responsible for funding the Sheriff's Office payroll, but emphasized that the Sheriff was responsible for hiring, training, and supervising staff and, indeed, made the decision to terminate Ms. Cink.  The district court concluded that Grant County did not meet either test, because it exercised no supervisory control over Ms. Cink individually or over labor relations in the Sheriff's Office generally.

The district court did not, however, address Ms. Cink's distinct argument, under *Owens v. Rush*, 636 F.2d 283 (10th Cir. 1980), that Grant County was her employer under basic agency principles, because the Sheriff is a Grant County officer and the Sheriff's Office merely a subordinate department of Grant County.  We note in this regard that a different judge of the same district court relied on *Owens* (and distinguished *Bristol*) to reach just such a conclusion in an ADEA/Title VII action brought against Grant County by another Grant County Sheriff's staff member. *See Payne v. Grant Cty., Okla.*, No. CIV-14-362-M, 2015 WL 4925782, *2-*3

3

(W.D. Okla. Aug. 18, 2015).[3]  As explained below, we conclude that *Owens* provides

the proper analysis here.

## II.  THE HOLDINGS OF *BRISTOL* AND *OWENS*

In *Bristol*, a confinement officer working for the Sheriff of Clear Creek

County, Colorado, brought suit against the Sheriff (in his official capacity) and the

Clear Creek Board of County Commissioners for alleged disability discrimination,

asserting that both the Sheriff and the Board qualified as her employers for purposes

of the ADA.[4]  "Under the Colorado constitution, the County Sheriff is a distinct

position, separate from the Board of County Commissioners."  *Bristol*, 312 F.3d at

1219 (citing constitutional provisions separately prescribing the election of county

commissioners and the election of sheriffs and other county officers).  Thus, the

circumstances in *Bristol* were suited to the joint-employer and single-employer tests,

which "are designed for situations where there is more than one alleged employer."

*Id.* at 1218; *see also id.* at 1218 n.5 (noting that "[i]n various factual contexts, other

tests have been followed by the courts, such as the agency test, the alter ego test, and

the instrumentality test," but "[b]ecause the joint-employer test and single-employer

test are most applicable to the present factual context, we will limit our analysis to

---

[3] Ms. Cink properly brought the *Payne* decision to this court's attention through a notification pursuant to Fed. R. App. P. 28(j).

[4] We refer at various points to employer status under the ADA, ADEA, and Title VII.  There are no material differences in these statutes for our purposes.  All refer broadly to a "person" (specified, or judicially interpreted, to include political subdivisions) "engaged in an industry affecting commerce who has [a requisite number of] employees."  29 U.S.C. § 630(b) (ADA); 42 U.S.C. § 2000e(b) (Title VII) 42 U.S.C. § 12111(5)(A) (ADEA).

these two tests"). Relying heavily on the fact that the Sheriff, and not the Board, exercised control over labor relations in the Sheriff's Office, this court held that the Board could not be deemed the employer under the ADA. *See id.* at 1219-20.

In *Owens*, a Sheriff's deputy brought suit under Title VII against the Sheriff of Wabaunsee County, Kansas, the Wabaunsee County Board of Commissioners, and Wabaunsee County itself. Focusing on the Sheriff as the only potential employer, the district court dismissed the suit because the Sheriff's department did not have the fifteen employees required for application of Title VII. This court reversed, making two points relevant to the present action—*viz.*, a Sheriff may be an agent of the County for Title VII purposes, and in assessing whether such an agency relationship exists the court should not conflate the County with the County Board:

> The district court concluded that the Sheriff should not be considered an agent of the county for purposes of hiring and firing Sheriff department employees because the Board of County Commissioners had little, if any, control over the Sheriff in such matters. Absent a "nexus" between the Board and the improper conduct, the court felt it unwise to impose Title VII liability on the County.
>
> The analysis employed by the district court apparently considers Wabaunsee County and the Board of County Commissioners as the same entity. In this lies the error. It is true that the County acts by and through the Board. However, the "Board" is not the "County." The County is a political subdivision encompassing and representing all citizens within its boundaries. The Board acts on behalf of the County—as its agent.
>
> Similarly, the Sheriff is an agent of the County. Like the Board members, he is elected by the body politic and acts on its behalf in enforcing the state's laws. The Sheriff is an agent of the County for all purposes under his control and jurisdiction. He is an agent of the County whether or not he would be considered an agent of the Board of County Commissioners under traditional agency principles.

5

*Owens*, 636 F.2d at 286 (footnotes omitted). Significantly, this agency relationship sufficed to show that the County was the employer of Sheriff staff without need to resort to principles for treating distinct entities as one (as was later done in *Bristol*): "The sheriff and the county in this case are more analogous to a department and the corporation it operates within than to separate corporate entities." *Id.* at 286 n.2. Finally, we added that "[a] fair interpretation of Title VII confirms our conclusion that the Sheriff should be considered an agent of the County," explaining that "[w]hatever the reason for excluding employers with fewer than fifteen employees from Title VII coverage, it should not be construed to exempt a political subdivision with many employees from Title VII proscriptions on grounds that the immediate employing agent has fewer than fifteen employees." *Id.* at 287. The same point applies equally to the ADA and ADEA, with their exclusions for employers with fewer than fifteen and twenty employees, respectively, *see* 42 U.S.C. § 12111(5)(A); 29 U.S.C. § 630(b).

To sum up: *Bristol* held that the Sheriff was a distinct entity from the County Board of Commissioners and, consequently, the Board could not be deemed an employer of Sheriff's staff absent satisfaction of one of the tests for imputing employer status between separate entities; *Owens* held that the Sheriff was not a distinct entity from—but rather an agent of—the County and, consequently, the County was properly deemed the employer of Sheriff's staff under traditional agency principles. In its appellate brief, Grant County refers dismissively to *Owens* as "outdated," Aplee. Response Br. at 26, raising the suggestion that the en banc *Bristol*

decision superseded *Owens* and its agency analysis.  We turn to the relationship

between *Bristol* and *Owens* next.

### III.  VITALITY AND REACH OF *OWENS* AFTER *BRISTOL*

*Bristol* did not abrogate *Owens*.  As a general matter, *Bristol* did not hold that

the joint-employer and single-employer tests it relied on displaced all other principles

relating to the analysis of employer status under federal employment-discrimination

statutes.  Rather, it noted that the applicability of the tests it applied was a function of

the circumstances it confronted—involving multiple separate entities as alleged

potential employers—and that different principles could properly govern in other

circumstances.  *See Bristol*, 312 F.3d at 1218 & n.5.

More specifically, *Bristol* explicitly acknowledged *Owens* and distinguished,

rather than disavowed, its agency-based holding.  *See Bristol*, 312 F.3d at 1220-21.

*Bristol* held that *Owens*' agency analysis applies when the employee-numerosity

requirement is implicated (i.e., when disregarding the agency relationship between

Sheriff and County would leave the court without subject matter jurisdiction to

remedy prohibited discrimination):

> *Owens* did conclude that a Kansas Sheriff was an agent of the County, but
> for the sole purpose of satisfying the fifteen-employee jurisdictional
> requirement of Title VII.  No such jurisdictional question is at issue in the
> present case, because the Sheriff of Clear Creek had more than fifteen
> employees.  Because we are presently faced with a case where the
> jurisdictional requirement is indisputably met, *Owens* is not implicated.

*Bristol*, 312 F.3d at 1220-21 (citation omitted).  Here, as in *Owens*, the federal

employment-discrimination claims would, if asserted separately against the Sheriff's

7

department, fail the jurisdictional numerosity requirement.  To fall within the ADA or ADEA, an employer must have fifteen or twenty employees, respectively, "for each working day in each of 20 or more calendar weeks in the current or preceding calendar year."  42 U.S.C § 12111(5)(A); 29 U.S.C. § 630(b).[5]  An interrogatory answer from Grant County indicates that the Sheriff's department had no more than twelve employees in any given week during the relevant period.  *See* Aplt. App. at 675-78.

Of course, to hold that *Owens'* agency principle remains available to attribute employer status to a County under the federal employment-discrimination statutes is not to hold that the principle necessarily applies under the circumstances of any particular case.  We must still determine whether the Grant County Sheriff should be treated as an agent of Grant County.

### IV.  SHERIFF AS AGENT OF GRANT COUNTY (SHERIFF'S OFFICE AS SUBORDINATE DEPARTMENT OF GRANT COUNTY)

Under Oklahoma law, the County is a body politic and corporate, Okla. Const. Art. XVII, § 1, encompassing several offices including the office of an elected Sheriff, *id.* § 2; Okla. Stat. tit. 19, § 131(A), who acts on the County's behalf by

_____

[5] We note there has been some question whether the numerosity requirement in the ADEA applies to government employers.  When the ADEA was amended to clarify that it covered political subdivisions, the sentence added to § 630(b) to make that point did not refer back to the numerosity requirement.  A number of circuits have now confirmed, based on legislative history showing a general intent to treat government and private employers the same, that the numerosity requirement applies to political subdivisions.  *See, e.g.*, *Palmer v. Ark. Council on Econ. Educ.*, 154 F.3d 892, 896 (8th Cir. 1998); *EEOC v. Monclova Twp.*, 920 F.2d 360, 363 (6th Cir. 1990); *Kelly v. Wauconda Park Dist.*, 801 F.2d 269, 273 (7th Cir. 1986).  We adopt that view here.

enforcing the state's laws within its boundaries, *see* Okla. Stat. tit. 19, § 516(A). The same basic points under Kansas law were enough for this court to hold in *Owens* that the Sheriff was an agent of the County and the Sheriff's staff were perforce County employees. *See Owens*, 636 F.2d at 286. In addition, the Oklahoma County Budget Act defines the Sheriff as a County officer, Okla. Stat. tit. 19, § 1404(8), and the Sheriff's Office as a constituent department of the County, *see id.* tit. 19, § 1404(7), (11). The state Governmental Tort Claims Act (GTCA) likewise recognizes County officers and their staffs as County employees, *id.* tit. 51, §§ 152(7)(a)(1), (11)(c), who are thereby insulated from tort liability (borne instead by the County through respondeat superior) for acts within the scope of their employment, *see id.* tit. 51, § 152.1.

Reflecting the above legal provisions in more concrete practical terms, the Grant County "Employee Personnel Policy Handbook" defines employees of the County "as those deputies and employees employed by or serving at the pleasure of the elected [county] officials," Aplt. App. at 249, and directs County officials to instruct each new hire to "report to the County Clerk's Office for enrollment as a county employee," *id.* at 250. And Grant County does not dispute that it paid Ms. Cink's wages, *see* Okla. Stat. tit. 19, § 153 (providing for County payment of salaries of county officers and their deputies and clerks), and enrolled her in its retirement plan, *see id.* tit. 19 § 957 (providing for County employee retirement plan for officers and employees). To be sure, Grant County points out that it is the Sheriff, and not the County Board, who oversees Sheriff's staff and was responsible for the prohibited

9

conduct alleged here. But this was also true in *Owens*, where "[t]he district court concluded that the Sheriff should not be considered an agent of the county for purposes of hiring and firing Sheriff department employees because the Board of County Commissioners had little, if any, control over the Sheriff in such matters." *Owens*, 636 F.2d at 286. We deemed the point immaterial to the County's liability as employer under the federal employment-discrimination statutes: "[I]t is inappropriate to condition the County's liability on whether the allegedly improper act was committed by the Board or the Sheriff when both are agents of the same political entity—the County." *Owens*, 636 F.2d at 286.

Grant County has not cited any authority, statutory or case law, that undercuts application of *Owens*' agency principle here. We have, however, discovered a decision of the Oklahoma Court of Civil Appeals that appears facially inconsistent with such a result. In *Bryson v. Oklahoma County ex rel. Oklahoma County Detention Center*, 261 P.3d 627 (Okla. Civ. App. 2011), the County was sued, pursuant to the GTCA, under a respondeat superior theory for an alleged assault committed by a Sheriff's deputy. The state trial court dismissed the claim on the basis that the deputy had not acted within the scope of his employment. After rejecting this rationale for dismissal, the court of appeals affirmed on the alternative basis that the deputy was not a County employee: "[I]t is apparent from the record that [the deputy] was employed by the Oklahoma County Sheriff's Office. Therefore, . . . the County was not [the deputy's] employer." *Id.* at 632. But the unstated premise of the court of appeals' truncated syllogism, i.e., that employment

10

in the County Sheriff's Office precluded—rather than reflected—employment by the County, rested on little analysis and no precedent from the state supreme court (or additional authority from the court of appeals). And in any event, *Bryson*'s holding does nothing more than underscore the Sheriff's direct supervisory responsibility for Sheriff' staff, which may be significant for purposes of respondeat superior liability under state tort law but, as we have seen, is not the focus of our analysis of the County's liability for purposes of the federal employment-discrimination statutes under *Owens*.

The notion of "employer" in the federal statutes is not limited to employment per se, but also explicitly incorporates agency. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 754 (1998) (referring to definition in Title VII[6]). Thus, "Congress has directed federal courts to interpret [these statutes] based on agency principles," and for that we must "rely on the general common law of agency, rather than on the law of any particular State." *Id.* at 754-55 (internal quotation marks omitted) (characterizing "[t]he resulting federal rule[s]" as "statutory interpretation pursuant to congressional direction"). The rule of *Owens* constitutes just such an agency principle and, per *Ellerth*, is not constrained by narrow state-law pronouncements regarding the scope of the strict employer-employee relationship. Consequently, the state court of appeals' summary holding about the lack of such a relationship between the County and the Sheriff's staff in *Bryson*, which involved a distinct state law

---

[6] The definitions of employer in the ADEA and ADA also refer to agents. *See* 29 U.S.C. § 630(b); 42 U.S.C. § 12111(5)(A).

context and turned on considerations lacking material import here, does not cause us to question our resolution of this case under *Owens*.

## V.  CONCLUSION

For the reasons stated above we conclude that, for purposes of the ADEA and ADA, Grant County qualifies as statutory "employer" of Grant County Sheriff staff, including Ms. Cink.  The entry of summary judgment for Grant County therefore cannot stand on the legal basis invoked by the district court.  And, because dismissal of the supplemental state-law claims was predicated on the failure of these federal claims, that disposition likewise cannot stand on its stated rationale.  Of course, our holding here does not mean Ms. Cink must ultimately prevail.  Grant County remains entitled to assert other defenses, at trial or indeed on summary judgment, to her federal and state claims.

The judgment of the district court is reversed and remanded for further proceedings consistent with this order and judgment.

Entered for the Court


Jerome A. Holmes
Circuit Judge